Below is an opinion of the court.

_____

THOMAS M. RENN
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>ETERNAL HILLS MEMORIAL GARDENS &<br>FUNERAL HOME, INC.,<br><br>        Debtor. | Case No. 17-62784-tmr7<br><br>MEMORANDUM OPINION[1] |

      This matter arises from Trustee Candace Amborn's Notice of Intent to Sell Real Property (Doc. #119), and subsequent Objection to Overbid filed by the State of Oregon through its agency the Oregon Mortuary and Cemetery Board ("OMCB") (Doc. #139). Although the original notice provided for a sale to Klamath County, Trustee Amborn reported an overbid and auction resulting in a higher bid coming from the Robert Alan Gordon Family Trust ("Gordon Family Trust"). *See* Trustee's Report of Auction, Doc. #188. On several grounds, OMCB objects to Trustee Amborn's attempt to sell the real property to the Gordon Family Trust or to any individual or entity affiliated with Robert A. Gordon Sr. ("Robert Gordon" or "Mr. Gordon").

_____

[1] This disposition is specific to this case and is not intended for publication or to have a controlling effect on other cases. It may, however, be cited for whatever persuasive value it may have.

According to the trustee's notice, she intends to sell real property parcels 2 through 8 as described in the notice. In the attached notes, the trustee further described the parcels as those obtained pursuant to the settlement with Robert Gordon and affiliates including "any and all their interests in parcel 2, 4, 5, 6, 7, and 8 (including attendant burial internment [sic] rights that make up the Debtor's mortuary and cemetery business)." Doc. #119. Trustee Amborn also has an option to purchase parcel 3 as part of the settlement, which is how she includes that parcel in the proposed sale.

After her appointment, Trustee Amborn filed six adversary proceedings seeking to avoid and recover transfers of real property made by Debtor to entities affiliated with Mr. Gordon. The parties participated in a settlement conference to resolve the allegations and disputes alleged in those adversary proceedings, after which the parties signed a settlement agreement. The parties have confirmed that the document identified as "Settlement Agreement After Judicial Settlement Conference on 05/16/19 and Further Amendment by Agreement" attached as Exhibit 1 to the Declaration of Brent G. Summers (Doc. #204-1) is an accurate copy of the Settlement Agreement. We are treating Exhibit 1 as admitted for this matter as a stipulated document.

The real property description in the trustee's sale notice conforms to the language from the Settlement Agreement, which says "Gordon shall deed to the Trustee all parcels of the real property and their attendant burial interment rights that make up the Debtor's mortuary and cemetery business." Doc. #204-1, Exhibit 1, Paragraph 1, page 2. That language overlaps with the motion and notice of intent to settle and compromise (Doc. #89). Paragraph 2 of that motion and notice requires Gordon and affiliates to "convey to the Trustee, on behalf of the Debtor's estate, any and all their interests in parcels, 2, 4, 5, 6, 7, and 8 (including attendant burial

internment [sic] rights that make up the Debtor's mortuary and cemetery business)." Doc. #89, Paragraph 2, pages 3-4.

In the Scheduling Order related to this stage of the dispute (Doc. #201), the parties framed two legal issues for me to decide. The first issue relates to state law restrictions on the ownership of real property designated as a cemetery, and the second questions the terms of the parties' settlement agreement. I'll take the second issue first.

**Settlement Agreement**

Question 2 asks "Does the Amended Settlement Agreement . . . prohibit the Robert Alan Gordon Family Trust, or any of the other Gordon Entities, from owning the cemetery?" Answering this question requires me to review the terms of the Settlement Agreement itself and determine whether those terms are ambiguous.

Both sides have insisted that the Settlement Agreement is clear on the prohibition issue. Mr. Gordon argues that "it is clear" that the Settlement Agreement allows him to protect his financial interests in the real property by exercising his overbid rights and purchasing the real property if he becomes the high bidder. OMCB argues that the Settlement Agreement clearly prohibits Mr. Gordon from being a bidder or an owner of the cemetery real property, because he agreed, in Paragraph 15 of the Agreement, to surrender his license and not to apply for a new license at any time in the future.

Settlement agreements are contracts, and a court must interpret them as contracts under controlling state law. *See O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004) (applying Oregon law to unwritten settlement agreement); *Cannon v. Hawaii Corp. (In re Hawaii Corp.)*, 796 F.2d 1139, 1143 (9th Cir. 1986) (applying Hawaii law to interpretation of a settlement agreement). Under Oregon law, when interpreting a contract, "the court's first inquiry is what the

words of the contract say, not what the parties say about it." *Oregon v. Heisser*, 350 Or. 12, 25

(2011) (*quoting Eagle Industries, Inc. v. Thompson*, 321 Or. 398, 405 (1995). "If the provision is

clear, the analysis ends." *Yogman v. Parrott*, 325 Or. 358, 361 (1997) (court interprets whether

contract terms are ambiguous as a question of law). *See also* ORS 41.740 (parol evidence rule

limits courts' ability to consider anything other than the written terms of a contract).

The Settlement Agreement discusses the listing and sale of the parcels in multiple

provisions, but it does not condition or limit Mr. Gordon's or his affiliates' abilities to participate

in the process. In Paragraph 1, page 2, the Settlement Agreement clearly contemplated that the

"Trustee shall list and sell the parcels conveyed." Although it does not provide any specifics on

the process, the agreement does require that the trustee and Mr. Gordon "cooperate in the

documentation of these transfers of the parcels," Paragraph 1, page 2-3, and that Mr. Gordon

must "fully cooperate with the . . . due diligence and sale process," Paragraph 5, page 3. With no

restrictions or other clarification, we must presume that the parties contemplated the normal

trustee listing and sale processes, including the notice and overbid procedures, used in a chapter

7 bankruptcy case. As part of the agreement, Mr. Gordon retains an interest in a share of the sale

proceeds, which gives him incentive to maximize the purchase price. *See* Paragraph 2, page 3.

As our first step, I must determine whether any ambiguity exists in this aspect of the

Settlement Agreement. A court finds ambiguity in a contract provision when, in context, it can

"reasonably . . . be given more than one meaning." *Yogman* at 363 (*quoting Pac. First Bank v.

New Morgan Park Corp.*, 310 Or. 342, 347-48 (1994)). OMCB argues that the Settlement

Agreement clearly prevents Mr. Gordon and his affiliates from purchasing the real property or

participating in the sale process. No such provision exists. According to Oregon law, courts are

"not to insert what has been omitted, or to omit what has been inserted" from contracts. ORS

42.230. The agreement provides only that Mr. Gordon surrender his license in exchange for an agreement not to apply for a license at any time in the future. Paragraph 15, page 5. OMCB states that any buyer of this real property must have a certificate of authority and that Paragraph 15 prevents him from obtaining such a certificate. If the agreement intended to prevent Mr. Gordon from participating in the sale process or in purchasing the real property, it should have said so. It did not, and I will not insert such a provision. I find no ambiguity in the Settlement Agreement on this issue.

After my review of the Settlement Agreement and considering the filings and arguments of the parties, I find that determining whether the agreement prohibits Mr. Gordon and affiliates from owning the cemetery is clear. It does not. Although the Settlement Agreement contemplated that Trustee Amborn would sell the property, it says nothing about the sale process or Mr. Gordon's rights related to that process. Additionally, the agreement required the surrender of Mr. Gordon's license, but it says nothing about his ownership of this cemetery or any other cemetery. Because the agreement contains no prohibition or other limitation, I find as a matter of law that the Settlement Agreement alone does not prohibit Robert Gordon or any entity owned by or affiliated with Robert Gordon from owning the cemetery or participating in the trustee's sale process.

**Ownership of Cemetery Property**

Returning to the first question, I must determine whether I can rule as a matter of law whether, under Oregon law, one may legally own real property designated as cemetery property

without also having a certificate of authority under ORS 692.025(6).[2] It will help answer this question if I clarify some details about the real property at issue.

The Bankruptcy Code authorizes a trustee to use, sell, or lease "property of the estate" after appropriate notice and a hearing. 11 U.S.C. § 365(b). Property of the estate starts with any property in which the debtor holds a legal or equitable interest as of the commencement of the case. 11 U.S.C. § 541(a). In its original schedules filed with the court (Doc. #13), Debtor listed no real property in Schedule A/B, Part 9, answering "No" to Question 54, "Does the debtor own or lease any real property?" That answer suggests Debtor believed the estate did not have any interest in real property at the time of the bankruptcy filing. Property of the estate, however, also includes any interest that a trustee recovers under 11 U.S.C. § 550. *See* 11 U.S.C. § 541(a)(3).

In the six adversary proceedings triggering the settlement, the trustee pursued recovery of the real property Debtor purportedly transferred prior to the bankruptcy filing. The Settlement Agreement provided for recovery of that real property, which became property of the estate. According to the settlement notice, the defendants agreed to reconvey "any and all their interests in parcels 2, 4, 5, 6, 7, and 8 (including attendant burial internment [sic] rights that make up the Debtor's mortuary and cemetery business)." Doc. #89.

In her sale notice, Trustee Amborn described the listed real property and attached "Notes on Proposed Sale" in which she described the global settlement agreement. Consistent with that agreement, the trustee detailed that Mr. Gordon and his affiliates agreed to convey to the estate "any and all their interests in parcels 2, 4, 5, 6, 7, and 8 (including attendant burial internment [sic] rights that make up the Debtor's mortuary and cemetery business)." Doc. #119. Trustee

---

[2] The Scheduling Order (Doc. #201) cited ORS 692.025(5) rather than ORS 692.025(6). The parties both in their briefs and during oral argument acknowledged the mutual error and agreed that ORS 692.025(6) is the correct statutory reference.

Amborn proposes to sell those interests in parcels 2, 4, 5, 6, 7, and 8, along with parcel 3 pursuant to her exercise of the option contained in the agreement.

In bankruptcy, the estate's "[p]roperty interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979). The Bankruptcy Code "neither creates nor enhances" the property interests brought into the bankruptcy estate, and the trustee takes the real property subject to those state law limitations. *See Oregon v. Braker (In re Braker)*, 125 B.R. 798, 799 (9th Cir. BAP 1991) (Oregon law limits property rights of redemption). Here, the trustee obtained interests in cemetery property; thus, we next need to review what limitation Oregon state law imposes on such property.

Historically, cemeteries in Oregon are treated in a different manner from other real property. The Oregon Supreme Court has said that "the places where the dead sleep are by all humankind treated as holy ground and by us are withdrawn from many of the rules which govern ordinary property." *Mansker v. City of Astoria*, 100 Or. 435, 452 (1921). "A cemetery is not only a place where the living may bury their dead, but it is also a place where they may express their affection and respect for those dead by marking and decorating the place of interment." *Mansker*, 100 Or. at 454 (citation omitted). *See also Schaefer v. West Lawn Memorial Cemetery*, 222 Or. 241, 245 (1960) (*quoting Mansker*).

Oregon law provides all cemetery property with protections and limitations not applied to other types of real property. "A burial place, where the bereaved family utters a word of prayer and pays homage to the deceased as his remains are lowered into the grave, is deemed by the reverent as a consecrated place." *City View Cemetery Ass'n v. Salem Mausoleum & Crematorium, Inc.*, 209 Or. 199, 214-215 (1956) (mausoleum company not liable for share of expenses from easement). As a result, cemeteries receive "particular protection from many of the

rules applied to private individuals and preventing cemetery lands from being encroached upon except under those special circumstances which the sovereign general policy permitted as evidenced by legislative enactment or judicial pronouncement." *People ex rel. Keller v. La Vista Cemetery* Ass'n, 175 Cal.App.2d 197, 201 (1959), *citing Bitney v. Grim*, 73 Or. 257, 262 (1914) (trustee could not convey cemetery property for any other purpose).

The Ninth Circuit has supported the state's special interest in cemeteries by stating that individual rights to real property ownership "must give way to the superior claims of the general welfare, and laws enacted to further the general welfare." *Masonic Cemetery Ass'n v. Gamage*, 38 F.2d 950, 956 (9th Cir. 1930) (California law) (*citing Mansker*). "It has been generally, if not universally, held that cemeteries are subject to the police power of the state." *Id.* The Oregon Supreme Court supported that notion by stating that, despite an agreement with the county, "the contractual rights must give way to the welfare of the public." *Powell Grove Cemetery Ass'n v. Multnomah County*, 228 Or. 597, 601 (1961) (state allowed to cause abandonment of cemetery). Oregon has incorporated these principles of common law into the state's statutes. *See Eugene Pioneer Cemetery Ass'n v. Spencer Butte Lodge No. 9 (I.O.O.F.)*, 228 Or. 13, 51 (1961) (ability to sell or convey the land is restricted).

The parties here agree that the real property at issue qualifies as "cemetery" real property that has been dedicated for "cemetery purposes." ORS 92.010 defines "cemetery" to mean a place "[d]edicated to and used, or intended to be used, for a permanent memorial or the permanent interment of human remains." Once dedicated, a cemetery must be "held, occupied and used exclusively for cemetery purposes." ORS 97.330. "Dedication to cemetery purposes . . . is deemed to be in respect for the dead, and is a provision for the interment of human remains and is a duty to, and for the benefit of, the general public." ORS 97.350.

The Oregon Legislature created the OMCB to carry out the purposes of the cemetery statutes. ORS 692.300. To assist in carrying out its duties, the OMCB "may adopt and enforce rules for the protection of the public health, safety and welfare" related to cemeteries and various categories of practitioners. ORS 692.320. Among other powers granted by the Legislature, the OMCB may license funeral service practitioners (ORS 692.025), issue certificates of authority for conducting the business of an operating cemetery (ORS 692.275), authorize temporary operating permits (ORS 692.280), and institute enforcement proceedings (ORS 692.385).

Pursuant to its delegated authority under ORS 692.320, the OMCB has adopted various administrative rules to assert its authority in this area. Those rules are published, as required by statute, as Oregon Administrative Rules in Chapter 830 for the OMCB. *See also* ORS 183.310(9) ("Rule" defined). Oregon Administrative Rule 830-040-0040 deals with a change of ownership of cemeteries and requires that "[p]rior to a change of ownership" the new owner must have an appropriate license or certificate of authority. Any change in ownership must be conditioned on the ability of the new owner to obtain the appropriate authority to operate and is subject to the approval of the Board. OAR 830-040-0040(4).

OMCB has suggested, consistent with the terms of the settlement agreement with Mr. Gordon, that it will not approve any sale or change of ownership to Mr. Gordon or to any entity affiliated with him. *See* OMCB Objection to Overbid, Doc. #139, page 6. Further, Mr. Gordon has agreed that neither he nor the Gordon Trust will attempt to operate the cemetery. *See* Gordon Declaration, page 1, attached to Gordon Response, Doc. #204.

Oregon state law contains no prohibition on Mr. Gordon, the Gordon Trust, or any affiliated entities protecting their financial interests by participating in the sale overbid process. It does, however, prevent him from purchasing the cemetery property, because no one may legally

own a cemetery without a certificate of authority from the state. Mr. Gordon is unable to obtain the appropriate license or certificate of authority, therefore, as a matter of state law, Mr. Gordon may not be a purchaser of cemetery property.

Turning to the Gordon Trust, the court recognizes the trust was not a party to the settlement agreement. *See* Doc. #204-1, Exhibit 1, page 1. However, the court notes that Mr. Gordon serves as the current trustee of the Gordon Family Trust. *See* Doc. #204-1, Exhibit 3, Paragraph 3, page 1-2. Mr. Gordon's affiliation with the trust would prevent the Gordon Trust from obtaining the necessary license or certificate of authority to purchase the cemetery, as required by OAR 830-040-0040. Therefore, as a matter of state law, the Gordon Trust also may not be a purchaser of the cemetery property. To complete the sale, "prior to a change of ownership," the Gordon Trust must find an assignee that is a qualified buyer with an appropriate license or certificate of authority. I will give the Gordon Trust 60 days to do so.

Additionally, pursuant to paragraph 10 of the Settlement Agreement, Mr. Gordon agreed to provide deeds to the trustee transferring the real estate parcels back to the bankruptcy estate. Although Trustee Amborn has not demanded the deeds, and counsel indicated in argument that completing the settlement transfers during the same escrow was acceptable to the trustee, I think that more should be done to comply with the Settlement Agreement including the cooperation terms. I will give Mr. Gordon, and the other entities, 30 days to tender the required deeds to the trustee, either to escrow or as directed by trustee's counsel.

**Conclusion**

Because the agreement contains no prohibition or other limitation, I will not insert such a provision and find as a matter of law that the Settlement Agreement alone does not prohibit Robert Gordon or any entity owned by or affiliated with Robert Gordon from owning the

cemetery or participating in the trustee's sale or overbid process. I do find, however, as a matter of state law that the trustee can only sell the property to a qualified buyer who must hold a license or certificate of authority as described under Oregon statute and administrative rules. The Gordon Trust, Robert Gordon, and any entity owned by or affiliated with Robert Gordon are not qualified buyers and may not purchase the real property.

Based on the discussion above and that determination, I will allow the Gordon Trust 60 days to close a sale of the real property with a qualified assignee. As a further condition of that allowance, Mr. Gordon and his affiliates must tender to the trustee, as instructed by trustee's counsel, deeds to the real property pursuant to paragraph 10 of the Settlement Agreement. If the deeds are not delivered within 30 days, or the sale to an assignee is not closed within 60 days, the trustee must close the sale to the alternate buyer based on the back-up offer received at the telephone auction held on July 21, 2020. *See* Doc. #188, Report of Results of Auction of Real Property.

This memorandum opinion constitutes my findings of fact and conclusions of law, and they will not be separately stated. The court will enter its own order based on this ruling.

###